IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANA RIVERA OLMO,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF CAROLINA,<br>ET AL<br><br>Defendants. | CIV. NO.: 16-2134 (JAG/SCC) |

**REPORT AND RECOMMENDATION**

Plaintiff Ana Rivera Olmo was a temporary employee of the Municipality of Carolina ("the Municipality") from 2011 until 2016. She sued the Municipality for sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-c *et seq.*, as amended; retaliation; and violations of Puerto Rico's Laws No. 17, 100, and 69. She also claimed violations under Article 1802 of the Puerto Rico Civil Code.

## I. Procedural background

On June 20, 2016, plaintiff filed suit against her former supervisor, John De Jesús Clemente, and against the Municipality of Carolina. Docket No. 1.

The Municipality moved for summary judgment. Docket No. 72. Plaintiff opposed the request. Docket No. 120. The Response was struck in part as per the Order at Docket No. 126. The following documents are thus stricken from the record:

(i) Plaintiff's First Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket No. 102

(ii) Plaintiff's Second Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket No. 112

(iii)    Plaintiff's Statement of Facts, Docket No. 120 at 9-16.

(iv) Plaintiff's Answer to Defendants' Statement of Proposed Uncontested Material Facts, Docket No. 120-1

(v) Plaintiff's Addendum 2 attaching Statement of Facts, Docket No. 124 at 10-21

(vi) Plaintiff's Amended Answer to Defendants' Statements of Proposed Uncontested Material Facts, Docket No. 124-1.

Defendants replied to plaintiff's response in opposition. *See* Docket No. 132.

## II. Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must examine the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor. *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251(1986)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge.").

A party opposing a properly supported motion for summary judgment, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (*quoting* Fed. R. Civ. P. 56(c)). The party cannot rest on his/her own allegations without "any significant probative evidence tending to support the complaint." *Id*. at 249.

### III. Factual Findings

Because the Court struck from the record plaintiff's Answer to Defendants' Statements of Proposed Uncontested Material Facts (Docket No. 120-1), the following factual findings are taken from defendants' Statements of Uncontested Material Facts ("SUMF") and supporting documentation. Docket No. 69. We also considered plaintiff's exhibits at Docket Nos. 120-2 through 120-8, and 120-17 through 120-19.[1]

---

[1] We did not consider Docket No. 120-20 because it appears to be a print out of an online article.

Upon reviewing the record, the Court finds that the following material facts are undisputed:

1. On or about April 17, 2011, plaintiff Ana Rivera started working in the Autonomous Municipality of Carolina. Plaintiff worked in the Municipality until June 30, 2016. *See* Exhibit 1, Ana Rivera's March 6, 2017 Deposition Transcript at Docket No. 69-1, pg. 49, lines 7-10, 14-17; Exhibit 3, Nydia R. Talavera Forty's Unsworn Statement under Penalty of Perjury, Docket No. 69-3, pg. 4, ¶13.

2. For the duration of her employment, Ms. Rivera worked under a transitory employment contract appointed to an Executive Analyst I position at the Department of Recreation and Sports. *See* Docket No. 69-1, pg. 49, lines 18-25; Docket No. 69-3, pg. 4, ¶14.

3. Ms. Rivera was aware that her transitory appointment had to be renewed every six months if there was a need for the services provided by an Executive Analyst I. Nevertheless, sometimes the employee would continue working beyond the six months period because there was a need for the service and the appointment would be issued later but made

retroactive to the corresponding date. *See* Docket No. 69-1, pg. 53, lines 17-25; pg. 54, lines 1-8, 11-19; pg. 55, lines 10-16; Docket No. 69-3, pg. 4, ¶15.

4. Each director of a department at the Municipality of Carolina decides if there is a need for the service provided by an irregular or transitory appointment in their respective departments. If so, they inform the Director of the Human Resources Department. If the need for service continues, the Human Resources Department automatically renews the transitory or irregular appointment contract and the employee will continue working. *See* Docket No. 69-3, pg. 4, ¶16.

5. The Municipality has a public policy and an affirmative action plan to prevent and address discriminatory conduct formulated in compliance with the provisions of Titles VI and VII of the Civil Rights Act and Section 101 of Executive Order 11246 and the laws of the Commonwealth of Puerto Rico. The policy is updated every three years. *See* Docket No. 69-3, pg. 1, ¶4; *see* Exhibit 11, 2013-2016 EEO Policy and Affirmative Action Plan, Docket No. 69-11, pgs. 1-45.

6. The Municipality of Carolina has developed and maintains administrative proceedings to handle any complaints of discrimination. The Office of Administrative Proceedings and Equal Employment Opportunities (which used to be the Department of Internal Affairs or DAI, for its Spanish acronym) is part of the Human Resources Department of the Municipality of Carolina. This Office oversees compliance with Executive Order 11246 and with the Municipality's antidiscrimination policies and affirmative action plan as well as compliance with the Rules and Regulations of Discipline of the Municipality and of the Human Resources Manual, the Regulations to Handle Sexual Harassment Complaints (Reglamento Para Atender Querellas de Hostigamiento Sexual) and other anti-discrimination policies of the Municipality. *See* Docket No. 69-3, pgs. 1-2, ¶5; Docket No. 69-11.

7. As Director of the Carolina Human Resources Department, Nydia R. Talavera Forty administers and puts into effect the public policy, affirmative action plan, and regulations that have been formulated by the

Municipality in compliance with the provisions of Titles VII of the Civil Rights Act and of all other applicable laws of the United States of America and the Commonwealth of Puerto Rico. *See* Docket No. 69-3, pg. 2, ¶6; pgs. 4-5.

8. The process to present and handle a sexual harassment complaint in the Municipality of Carolina is regulated and explained in detail in the manual titled Regulations to Handle Sexual Harassment Complaints, approved by Mayor José Aponte De La Torre on March 21, 2001. *See* Docket No. 69-3, pg. 2, ¶7.

9. At the beginning of her transitory appointment, Ana Rivera worked under the supervision of Mr. Juan Lugo and when Mr. Juan Lugo was transferred to another position in the Municipality of Carolina, John De Jesús became the Auxiliary Director of the Office of Recreation of the Department of Recreation and Sports of the Municipality on July 1, 2011. *See* Docket No. 69-1, pg. 56, lines 10-15; *see* Complaint, Docket No. 1, at pg. 4, ¶16; Docket No. 69-3, pgs. 5-6, ¶20.

10. De Jesús works for the Municipality of Carolina since 1999. On July 1, 2011, De Jesús became the Auxiliary

Director of the Office of Recreation of the Department of Recreation and Sports. At all times pertinent to this case, he was performing in that capacity. *See* Docket No. 69-3, pg. 6, ¶21; *see* Exhibit 4, Luis Reyes Ortiz's Unsworn Statement Under Penalty of Perjury, Docket No. 69-4, pg. 2, ¶¶7-9.

11. During the period of time relevant to the Complaint, De Jesús supervised about 37 persons, between employees and independent contractors. *See* Docket No. 69-4, pg. 3, ¶13.

12. Ms. Rivera was De Jesús' administrative assistant. *See* Docket No. 69-4, pg. 3, ¶14.

13. On November 2013, Ms. Rivera filed a Petition for a Protective Order under Law 54 against her husband Santiago Hiraldo Santiago. *See* Docket No. 69-1, pg. 30, lines 4-7; Docket No. 69-4, pg. 5, ¶22.

14. Santiago Hiraldo and Rivera met at work. Docket No. 69-1, pg. 28, line 24; pg. 29, lines 1-10.

15. With respect to the Restraining Order against her husband, Ms. Rivera talked to the Director of Recreation and Sports Department because she wanted the Municipality to put in effect the Domestic Violence

protocol, so that her husband could not approach her during work hours. *See* Docket No. 69-4, pg. 4, ¶20.

16. Santiago Hiraldo was transferred to the Department of Conservation of Buildings in the same position and with the same duties and advised that he could not approach Rivera at work. She was also referred to the Program of Help and Rehabilitation of the Employee (Programa de Ayuda y Rehabilitación del Empleado or PARE program, for its acronym in Spanish). *See* Docket No. 69-1, pg. 40, line 2 to pg. 42, line 1; pg. 44, lines 9-14; *see also*, Docket No. 69-4, pg. 5, ¶¶23-25; Docket No. 69-3, pg.7, ¶27; Docket No. 69-10, pg. 40.

17. Rivera reconciled with Santiago Hiraldo about 3 or 4 months after the divorce and they lived together again until August 22, 2016, at which time he moved out of the house again. *See* Docket No. 69-1, p. 29, lines 17 to pg. 30, line 3; Docket No. 69-2, pg. 8, lines 4-8; pg. 8 lines 14 to pg. 9, line 10.

18. On October 30, 2014, Ana Rivera went to the Department of Internal Affairs to complain about a pattern of harassment by John De Jesús where he allegedly exhibited an intimidating conduct and lack

of respect to other employees. *See* Docket No. 69-6, Roberto Colón Baerga's Unsworn Statement, pg. 1, ¶ 3.

19. As a result of the complaint, Rivera met with investigator Roberto Colón Baerga. He advised Ms. Rivera about the procedure that she had to follow to file her complaint. Specifically, he informed her that if she had any concerns regarding labor harassment and persecution against her and other employees by their supervisor John De Jesús, she had to go through the proper channels. The first step was to file a written complaint with the Director of the Department of Sports and Recreation and then, the Director would refer her complaint to the Department of Internal Affairs for investigation. *See* Docket No. 69-6, pg. 1, ¶¶ 2-5.

20. On October 30, 2015, Ms. Rivera sent a letter to Mayor José Aponte Dalmau where she complained of harassment in the workplace but does not mention sexual harassment. Docket No. 69-2, pg. 36, lines 7-25; pg. 38, lines-10-25; pg. 40, lines 9-21.

21. In a letter dated May 6, 2015 and addressed to Mayor José Aponte Dalmau, Ms. Rivera complained about

"persecution, lack of tact, reprisal, frivolous reprisal" and other conduct displayed by supervisor De Jesús. In the letter, Ms. Rivera did not include allegations of sexual harassment. *See* Docket No. 69-2, pg. 31, line 9 to pg. 34, line 17; Docket No. 69-2, pg. 34, line 25 to pg. 35, line 16.

22. In a subsequent letter dated June 5, 2015 delivered to the Department of Human Resources, plaintiff did not complain about De Jesus's alleged sexual harassment. *See* Exhibit 3, Nydia R. Talavera Forty's Unsworn Statement, pg. 8, ¶32.

23. In the June 5 letter, Ms. Rivera mentions that there is a conduct by De Jesús that is affecting her and her husband as well as other people that have been removed from their positions. Ana Rivera describes De Jesús's behavior as "work bullying" or "job bullying", "a harassing behavior, persecution, a surveillance and stalking and harassment in other forms." Rivera complains that John De Jesús "continues taking reprisals whenever employees try to exercise their rights and not act how he wants them to". Rivera admitted that in the letter dated June 5, 2015, she did

not mention a "sexual harassment" conduct by De Jesús. *See* Docket No. 69-2, pg. 42, line 3 to pg. 44, line 5.

24. Ana Rivera admitted that at the end of the June 5, 2015 letter, she requested as a reasonable accommodation, "to be transferred with urgency, because of her health conditions, that have been caused by the harassment and persecution of Mr. De Jesús". *See* Docket No. 69-2, pg. 44, lines 12-18.

25. On June 5, 2015, Ana Rivera filed a Petition of Protective Order under the PR Stalking Act in the Puerto Rico First Instance Court of Carolina, Case No. 15-284-260, against John De Jesús pursuant to which a mutual Protective Order was in effect. Rivera could not approach De Jesús and De Jesús could not approach Rivera while the case was in progress. *See* Docket No. 69-3, pg. 13, ¶48; Docket No. 69-2, pg. 98, lines 10-21.

26. On June 12, 2015, as instructed by the Director of the Human Resources Department, Roberto Colón Baerga, investigator of the "Office of Administrative Proceedings and Equal Employment Opportunities" (which used to be the "Department of Internal Affairs"

or "DAI" for its Spanish acronym) called Rivera to see if she would agree to an administrative mediation hearing. Rivera declined to participate alleging that she was following her attorney's instructions. *See* Docket No. 69-3, pg. 8, ¶ 30; Docket No. 69-6, pg. 2, ¶¶ 7,8.

27. Before June 17, 2015, Ms. Rivera had never complained to the Director of the Municipality's Department of Recreation and Sports, about the alleged pattern of continuous sexual harassment by her supervisor. *See* Docket No. 69-4, pg. 4, ¶19; Docket No. 69-2, pg. 75, lines 1-6.

28. Then, on June 17, 2015, Ms. Nydia Talavera Forty received at the Department of Human Resources a letter dated June 15, 2015, addressed to the Mayor of the Municipality of Carolina and signed by Rivera, which was titled "Official Complaint Amending that of June 5, 2015" ("Querella Oficial Enmendando la del 5 de junio de 2015") where, in addition to Ms. Rivera's previous complaints, she conveyed, for the first time, that she was being sexually harassed by supervisor De Jesús. *See* Docket No. 69-3, pg. 8, ¶ 31.

29. On June 25, 2015, Rivera filed a complaint before the Equal Employment Opportunity Commission ("EEOC"). *See* Docket No. 69-1, pg. 81, lines 5-8.

30. Rivera admitted that after she took the June 5, 2015 and the June 15, 2015 letters to the Human Resources Department complaining of sexual harassment, attorney investigator, Midzaida Irizarry, of the Office of Administrative Proceedings and Equal Employment Opportunity opened an administrative investigation. *See* Docket No. 69-1, pg. 80, lines 9-16; Docket No. 69-2, pg. 76, lines 2-8; Exhibit 5, Defendants' First Interrogatory and Plaintiff's Answer to Defendants' First Interrogatories, Answer to Interrogatory number 3, pg. 2, 3, at Docket No. 69-5.

31. On June 18, 2015, the Human Resources Director, Nydia Talavera Forty, activated the Municipality of Carolina's protocol to handle sexual harassment complaints. *See* Docket No. 69-3, pg. 9, ¶ 34.

32. On June 19, 2015 at noon, Rivera was informed that on Monday, June 22, 2015, as a safety measure and pursuant to her own request, she would be relocated at the Julia De Burgos Park, Phase V, a site relatively

different and distant from where she worked with De Jesús. Ms. Rivera would now be under the supervision of Ms. Sonia Lasalle, Auxiliary Director of the Office of Recreational Associations of the Department of Recreation and Sports. Rivera signed the transfer document on that date, at 9:22 a.m. *See* Docket No. 69-2, pg. 82, line 24 to pg. 83, line 7; Docket No. 69-3, pg. 10, ¶36; Docket No. 69-4, pg. 6, ¶¶28, 29.

33. Ana Rivera admitted that as soon as she was moved to the Office of Recreational Associations, John De Jesús was removed from his duties as her supervisor. *See* Docket No. 69-2, pg. 84, lines 14-18.

34. Attorney Midzaida Irizarry was assigned to investigate the complaint. She interviewed numerous witnesses and reviewed 64 official documents. She also made an onsite inspection of the offices. *See* Exhibit 7, Midzaida Irizarry Ramírez's Unsworn Statement, Docket No. 69-7, pages 3, 4, ¶14; pg. 5, ¶19; pages 4, 5, ¶¶15, 16.

35. Attorney Midzaida Irizarry prepared an investigation report dated October 23, 2015, that was addressed to the Human Resources Director Nydia R. Talavera Forty, accompanied with a copy of the sixty-four

documents that she had reviewed and all the sworn statements of the witnesses that she had interviewed. *See* Exhibit 7, Midzaida Irizarry Ramírez's Unsworn Statement, Docket No. 69-8, pg. 5, ¶17; Docket No. 69-3, pg. 10, ¶37.

36. In view of her findings of facts and law and the conclusions reached, Irizarry recommended that the sexual harassment complaint filed by Ms. Rivera against De Jesús be administratively dismissed for lack of evidence to support the allegations of sexual harassment as well as those of labor harassment and persecution. *See* Docket No. 69-8, pg. 17, ¶22.

37. After reviewing the Report of Investigation, Ms. Talavera also concluded that Rivera had not provided any evidence to support her sexual harassment allegations. *See* Docket No. 69-3, pg. 10, ¶38.

38. Thus, in accordance with the procedure set forth in the Municipality's regulations, Ms. Talavera wrote a Special Report addressed to Mr. Manuel I. Mangual Rodríguez, Administration Manager of the Municipality of Carolina, with their findings. Ms. Talavera also recommended that Rivera's sexual

harassment complaint be administratively dismissed for lack of evidence. *See* Docket No. 69-3, pg. 12, ¶46.

39. Mr. Mangual Rodríguez ordered the administrative dismissal of the charges and notified through letter the outcome of the investigation to Mr. De Jesús. The outcome of the investigation was also notified to the charging party, Ms. Rivera, on December 11, 2015. *See* Docket No. 69-3, pg. 12, ¶47; Docket No. 69-2, pg. 97, lines 22 to pg. 98, line 3.

**Allegations of Sexual Harassment**

40. Ms. Rivera alleged that around July 2011, when John De Jesús became her supervisor he "looked at her lustfully." In her deposition, Ms. Rivera explained that "on several occasions" (10, 15 more than 15) she went to his office and she was dressed in blazer and skirt, and when she left the office he would look at her staring at her body and clothing. Ms. Rivera also averred that if she was sitting and the skirt went up he would stare, looking at her legs. Ms. Rivera states that De Jesús' would stare at her with a "fixed look" that was "lustful" because we would be "looking at you directly." *See* Docket No. 69-1, pg. 84, line 3 to pg. 85,

line 10; pg. 89, line 19 to pg. 90, line 3.

41. Ms. Rivera averred that a "lustful look" is a look that will always be accompanied by an "undesired flirting comment" like telling her "You look different today" or "You look pretty", comments that De Jesús said once when she changed her hairstyle and when she wore a new blouse. Ms. Rivera testified that the way that she had to let De Jesús know that the "flirting comment" was unwelcomed was her silence and "to ignore him." *See* Docket No. 69-1, pg. 93, lines 6-17; pg. 93, line 19 to pg. 95, line 6; pg. 95, line 20 to pg. 96, line 3; pg. 97, lines 1-5.

42. Ms. Rivera alleged in her deposition that it was in 2014, three years after De Jesús began with his alleged conduct of "accommodating his genitals," that she started to believe that this conduct could amount to sexual harassment. Grabbing his crotch while talking to her, by itself, did not make her think he was sexually harassing her. She really thought that it was sexual harassment when in 2015 she noticed the other conduct, for example, his stares, the way in which he was watchful on her, and the changes that she alleged

occurred when other male individuals arrived. *See* Docket No. 69-1, pg. 102, line 17 to pg. 103, line 22.

43. Mr. Rivera also stated that "if a man came into the office and I talked to him, De Jesús would get angry at me and would start yelling and harassing me. *See* Exhibit 5, Plaintiff's Answer to Defendants' First Interrogatories, Docket No. 69-6, Answer to Interrogatory number 6 at pg. 4, lines 1-3.

44. Ms. Rivera testified that when her husband would be in the office, De Jesús would inquire: "Why is he here? He shouldn't be here." *See* Docket No. 69, pg. 106, lines 4-8, 11-18.

45. Ms. Rivera admitted that, as part of the domestic violence protocol activated by the Municipality, notwithstanding the order lifting the protective order, Santiago Hiraldo was not permitted to be in her office. *See* Docket No. 69-1, pg. 129, lines 8-14.

46. Ms. Rivera admitted that she did not always tell De Jesús when she was going out of the office; sometimes she told coworkers Hugo Cardona or José "Tony" Rivera through her personal cell phone. *See* Docket No. 69-2, pg. 20, lines 13-18.

47. Ms. Rivera complained that De Jesús would request medical evidence from her, without requesting any evidence from the other employees he supervised when they were absent from work, but she also admitted that she does not know if they called De Jesús to inform that they would be absent or not. *See* Docket No. 69-2, pg. 27, lines 21-25; pg. 29, lines 4-16.

48. According to the official records under Nydia Talavera's custody, in 2011, Ms. Rivera never took a medical leave of absence; in 2012, she was absent for sickness 21 times; in 2013, twenty-four (24) times; in 2014, thirty-nine (39) times; and from January to June 2015, twenty-two (22). *See* Docket No. 69-3, pages 13, 14, ¶50.

49. Regarding Ms. Rivera's complaint that De Jesús had requested a medical certificate after she had been absent from work, the Director of the Municipality's Department of Recreation and Sports explained to her that according to the Regulations for the Administration of Human Resources ("Reglamento para la Administración de Recursos Humanos") of the Municipality of Carolina, when an employee is absent

from work because he/she is sick it is the supervisor's duty to request a medical certificate issued by a doctor authorized to practice medicine in Puerto Rico, crediting that the employee was unable to work during the time of his/her absence. Submitting a medical certificate may be required even for a one (1) day absence and, if necessary, the supervisor may corroborate the employee's inability to come to work because of sickness, by other means. *See* Exhibit 4, Luis Reyes Ortiz's Unsworn Statement, Docket No. 69-4, pg. 5, ¶26; Docket No. 69-3, pg. 13, ¶49.

50. On August 12, 2015, Ms. Rivera signed a Sworn Statement whereby she stated that Mr. De Jesús had not made any sexual comments to her, but rather that his "messages were transmitted through his body language" such as touching his genitals. Docket No. 120-19 and 129-11 (English translation).

**Ms. Rivera's termination**

51. On April 15, 2016, the Director of Human Resources sent two communications to all the Directors of all the Departments, including Mr. Luis Reyes Ortiz (Director of the Department of Recreation and Sports) asking

them to evaluate the need for the service of the employees that were working in their Departments under transitory or regular contracts and to timely report which of these contracts would finish on June 30, 2016. Each of the communications was accompanied with the corresponding list of all the employees with regular or transitory appointments under contract that were to be evaluated. *See* Docket No. 69-4, pg. 8, ¶36; Docket No. 69-3, pgs. 14,15, ¶55.

52. In response, on May 10, 2016, Reyes Ortiz sent a letter to the Director of Human Resources notifying her that, to improve efficiency, the Department of Recreation and Sports had reorganized all the programs and services in the remodeled building of the Department and the new structure did not need the transitory Executive Analyst I position that was being occupied by Ms. Rivera. The Manager of the Area of Management of Services, Mr. Víctor Pellot Ríos, also signed this letter. *See* Docket No. 69-4, pg. 8, ¶37; Docket No. 69-3, pg. 15, ¶56.

53. On that same day, May 10, 2016, the Department of Human Resources prepared a letter to notify Ms.

Rivera that her transitory appointment contract as Executive Analyst I in the Department of Recreation and Sports was ending on June 30, 2016. Such letter was sent with the other similar letters through the usual channels to the Office of the Mayor to be considered and signed by him, and later distributed to the employees affected. *See* Docket No. 69-3, pg. 15, ¶57.

54. Since the services of the position occupied by Ms. Rivera were no longer needed, Ms. Rivera's transitory appointment contract was not renewed but came to an end on June 30, 2016, and this executive analyst transitory position was eliminated in the reorganization of the Department of Recreation and Sports. *See* Docket No. 69-3, pg. 16, ¶61.

55. 11 transitory employees in the Municipality of Carolina received that same letter informing them that their contracts were being terminated on June 30, 2016. *See* Docket No. 69-3, pg. 16, ¶60.

56. No one has been retained as Executive Analyst I in the Department of Recreation and Sports to occupy Ana Rivera's position after her transitory appointment

contract ended as of June 30, 2016. *See* Docket No. 69-3, pg. 16, ¶62.

## IV. Analysis

The Municipality seeks summary dismissal of the claims on the following grounds: (1) plaintiff failed to exhaust administrative remedies as to the retaliation cause of action; (2) the statute of limitations has elapsed;    (3) plaintiff did not establish a prima facie case of hostile work environment; (4) plaintiff failed to make a prima facie showing of retaliation; and (5) the Municipality has proffered a legitimate-non-retaliatory reason for terminating plaintiff.

### A. No employee liability under Title VII against supervisor

Ms. Rivera sued both her supervisor and the municipality. However, the First Circuit has held that "there is no individual employee liability under Title VII." *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009).

Therefore, we recommend that the Title VII claim against De Jesús be dismissed with prejudice.

### B.  Failure to Exhaust

The Municipality argues that Ms. Rivera failed to exhaust administrative remedies before the EEOC with respect to her

allegations of constructive discharge and retaliation. *See* Docket No. 72 at pg. 24.

An individual who has suffered discrimination at the hands of his/her employer on account of race, color, religion, gender, or national origin must file an administrative complaint with the EEOC within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–15(c)(1) & 16(c). The employee may commence a civil action against the employer if the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing. *Id.* § 2000e–5(f)(1).

Generally, claims not brought up within the EEOC prior to judicial action are barred. "In light of the statutory scheme, it is unsurprising that, in a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). However, courts have carved out an exception with regards to retaliation claims. "Retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination" charged in the administrative complaint. *Clockedile v. New Hampshire Dept. of Corrections*, 245 F.3d 1, 6 (1st Cir. 2001).

Ms. Rivera initiated EEOC proceedings on June 24, 2015, which was approximately a year before she ceased her employment at the Municipality. Her EEOC complaint alleged that she was suffering sexual harassment. Once she filed the lawsuit that is now before the Court, she included allegations of constructive discharge and retaliation for events that occurred after the filing of her EEOC. Specifically, she averred that she was constructively discharged for having complained of sexual harassment to the EEOC. *See* Docket No. 1 at pg. 2.

This is precisely the type of scenario that the *Clockedile* court contemplated when it spelled out the exception to the administrative exhaustion rule. Ms. Rivera's relation claim is reasonably related and grows out of the discriminatory allegations raised before the EEOC. Therefore, we recommend that plaintiff's claim for constructive discharge/retaliation not be dismissed for failure to exhaust administrative remedies.

### C.  Statute of Limitations

Next, the Municipality argues that most of plaintiff's claims are time-barred because she did not file the EEOC charge within 300 days of the alleged adverse employment

action. Docket No. 72 at pg. 25. According to the Municipality, all actionable acts that occurred before August 28, 2014, (the 300th day prior to the filing of the EEOC Charge on June 24, 2015), should be considered time-barred. *See* Docket 72 at pg. 26. By this rationale, most of the allegations charging sexual harassment would be excluded because plaintiff stated in the Complaint that De Jesús began to harass her between December 2011 and January 2012. *See* Docket No. 1 at pg. 4, ¶¶ 17, 19.

42 U.S.C. § 2000e–5(e)(1) provides, in relevant part, that a charge before the EEOC shall be filed by or on behalf of the person aggrieved "within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law."

It is often the case, however, that discrimination actions are based on allegations of hostile work environment, and the case law holds that hostile environment claims "by their very nature" "involve repeated conduct." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2016, 20173 (2002). Courts have interpreted hostile work environment claims as being "composed of a series of

separate acts that collectively constitute one 'unlawful employment practice.'" 42 U.S.C. § 2000e–5(e)(1). In such cases, as long as "an act contributing to the claim occurs within the filing period, the entire time of the hostile environment may be considered by a court for the purposes of determining liability." *National Railroad*, 536 U.S. at 116. Thus, even if some of the acts fall outside the statutory period, the Court may consider them as part of the unlawful employment practice charged. *Id*.

However, for the so-called continuing violation doctrine to apply, a plaintiff "needs to establish that a discriminatory 'anchoring act' occurred within the limitations period." *Lockridge v. The University of Maine System*, 597 F.3d 464, 474 (1st Cir. 2010). "To qualify as an anchoring act, the discriminatory act must 'substantially related to [the] earlier incidents of abuse.'" *Id*. (internal citations omitted).

Plaintiff states that the alleged sexual harassment was continuous from the end of 2011 through the date of her termination of employment and identifies several acts falling within the statutory period, such as Mr. De Jesús' alleged touching of his genitals in front of her.

We find that because the hostile work environment claims involve repeated conduct rather than discrete acts, and at least some of the alleged sexual harassment acts occurred within the statutory period, the action is not time-barred.

### D. Sexual Harassment under Title VII

With regards to the "nucleus" of the Complaint, the sexual harassment claims, defendants aver that plaintiff faltered in establishing that De Jesús' conduct was sufficiently severe or pervasive to alter the conditions of her employment. *See* Docket No. 72 at pg. 30.

Sexual harassment has been recognized as a form of Title VII discrimination. *Garcia v. V. Suarez & Co.*, 288 F. Supp. 2d 148, 157 (D.P.R. 2003). Sexual harassment claims may take the form of "hostile work environment" in which plaintiff alleges that the harassment was "sufficiently severe" or pervasive enough to "alter the conditions of [the victim's] employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 24, 114 S.Ct. 367, 371-72 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399 (1986)).

To prevail on her claims of sexual harassment under Title VII, Ms. Rivera must first show that she is a member of a protected class. *Forrest v. Brinker Intern. Payroll Co.*, LP, 511 F.3d 225, 228 (1st Cir. 2007). Then she must establish that she "was subjected to unwelcome sexual harassment." *Id*. Third, plaintiff must show "that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so." *Id*. Finally, Ms. Rivera must provide some basis for employer liability. *Id*.

After carefully reviewing the uncontested material facts, we conclude that plaintiff has not made a *prima facie* showing of discrimination. Ms. Rivera avers that she was subjected to sexual harassment by her supervisor Mr. De Jesús. The date in which the alleged harassment began is uncertain. In fact, long before she complained about sexual harassment, Ms. Rivera had signaled De Jesús for his managerial style, which she described as "job bullying", "persecution" and "surveillance." According to Ms. Rivera, De Jesús acted in such a manner towards other employees as well.

In support of her sexual harassment allegations, Ms. Rivera testified during her deposition that Mr. De Jesús

would often "grab his genitals" as if to "accommodate them" but explained she did not perceive those actions as being sexual in nature until later, when at one point she "put together" the looks he directed at her, with his crotch gestures. Ms. Rivera further argues that Mr. De Jesús would be upset when her husband (who was a coworker) would come into the office and inquire about his presence there. Finally, Ms. Rivera's sexual harassment cause of action also rests on Mr. De Jesús' requests that she be present in the office, and that she provide a medical certificate whenever she was absent from work, even if just for a couple of hours.

The Municipality refutes these allegations and puts forth uncontested facts to support the conclusion that there was no hostile work environment. For starters, the Municipality proffers that during the four years that the alleged harassment went on, Mr. De Jesús did not utter any remarks, sexual innuendos, or comments that could be construed as being sexually charged or offensive. Ms. Rivera first mentioned the incidents of sexual harassment in June of 2015, after she had already sent multiple letters to the Municipality complaining about De Jesús' supervisory approach.

When she did complain about De Jesús' "touching" of his genitals, Ms. Rivera provided the following description:

> He'd touch his genitals, like he would try to accommodate. I don't know how to say it, just put it in place. And he'd open his legs. At the beginning I thought that he had maybe a medical condition or he was ill or had some sort of habit or miss habit (sic). But that situation became quite more frequent, because of all the time that I was working there….He sat back, and he would grab-- He would accommodate his crotch. I thought this was sort of a mishandling of his parts, because here in Puerto Rico it's customary for that to happen.

Docket No. 69-1 (Deposition of Ms. Rivera), pg. 99, lines 5-11, 17-21.

According to Ms. Rivera, it wasn't until 2015 that she associated such conduct with sexual harassment, together with the other conduct she identified such as his "looks," "the way he was attentive to her" or "the changes that occurred whenever male individuals arrived." *See* Docket No. 69-1, pg. 103, lines 1-4.

Taking all these facts together, and making all reasonable inferences in favor of plaintiff, we still fail to see how the conduct described rises to the level required for a hostile work environment. The law is clear that an abusive work

environment that violates Title VII has to be "permeated with discriminatory intimidation, ridicule, and insult" (emphasis ours). *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 39 (1st Cir. 2007)(citing *Harris,* 510 U.S. at 21). The Supreme Court has repeatedly emphasized that "simple teasing," "offhand comments," and "isolated incidents (unless extremely serious)" will not amount to discriminatory hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(internal citations omitted).

Ms. Rivera had witnessed De Jesús alleged grabbing of his genitals for years before she associated it with sexual harassment and she even thought that her supervisor could have a medical condition. The other "indicators" that supposedly led Ms. Rivera to the conclusion that her supervisor was sexually harassing are equally unconvincing. Mr. De Jesús' resistance to the presence of Ms. Rivera's husband is logical, given that she had a protective order against him and she had requested activation of the Municipality's domestic violence protocol. Even after she had voluntarily lifted the restraining order, it is understandable that her supervisor would protect her and maintain a safe work environment by preventing her abusive husband from

being in the premises. The same can be said for Mr. De Jesús' requests that Ms. Rivera provide a medical certificate whenever she was absent from the office. He was simply complying with the Municipality's policies and regulations requiring that employees certify their health-related absences.

We thus find that there is insufficient evidence in the record for a reasonable jury to conclude that Ms. Rivera was subjected to unwelcome sexual harassment by De Jesús.

Moreover, Ms. Rivera has not demonstrated that the Municipality "knew or should have known of the alleged sexual harassment and failed to implement prompt and appropriate action to remedy the situation." *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002).

The undisputed facts show that Ms. Rivera did not complain about the alleged sexual harassment until the complaint letter dated June 15, 2015, even though the Municipality has a policy for addressing such complains and regularly trains employees and managers on the subject. Once Ms. Rivera did complain, the Municipality strictly adhered to its Policy. Although in her Complaint Ms. Rivera argues that she never received a response from the Municipality regarding her complaint of sexual harassment, the

Municipality has proffered ample evidence that shows otherwise.

Less than two weeks after the June 14, 2015 letter, Human Resources Director Talavera activated the Municipality's sexual harassment protocol regarding Ms. Rivera. Attorney Midzaida Irizarry was assigned to open an investigation. One day after the protocol was activated, Ms. Rivera was informed that she would be relocated and assigned to a different supervisor on June 22, 2015. On October, 2015, Irizarry rendered a thorough report of her investigation, where she made the recommendation to dismiss Ms. Rivera's complaint. The report was submitted to Talavera, who, in turn, made a Special Report to the Administration Manager of the Municipality of Carolina, endorsing Irizarry's recommendations. After reviewing all the documentation, Administration Manager Manuel Mangual recommended that Ms. Rivera's sexual harassment complaint be administratively dismissed for lack of evidence.

In addressing the situation with urgency (including transferring Ms. Rivera to protect her) and carrying out a detailed investigation into the complaint, the Municipality has shown that it discharged its responsibility to implement

prompt and appropriate action. Ms. Rivera has not set forth uncontested material facts to rebut the Municipality's ample evidence of compliance with its sexual harassment protocols. For that reason, we recommend that the Court grant the Municipality's request to summarily dismiss the sexual harassment hostile work environment claim.

### E. Retaliation

Title VII's antiretaliation provisions make it unlawful for employers to retaliate against a person who complains about unlawful discriminatory practices or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006)(citing § 2000e–3(a)). Ms. Rivera argues that the Municipality constructively discharged her by not renewing her contract because she filed the EEOC charge.

To establish her retaliation claims, Ms. Rivera must first make a *prima facie* showing that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked. *See Dressler v. Daniel*, 315 F.3d 75, 78 (1st Cir.2003); *Sullivan v. Raytheon Co.*, 262 F.3d 41, 48 (1st Cir.2001). If the plaintiff succeeds in making a *prima*

*facie* showing, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for its employment decision." *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 26 (1st Cir. 2004). "If the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Id*. (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Here, Ms. Rivera has shown that she undertook protected conduct when she filed her EEOC complaint on June 25, 2015. Ms. Rivera has also established that her termination constitutes an adverse employment action. Although she was a temporary employee, this District has adopted the view that non-renewal of a temporary work contract may constitute an adverse employment action. *Cardalda-Sanchez v. Universidad Carlos Albizu*, Civil No. 08-1819 (JAF), 2010 WL 597429, *5 (D.P.R. Feb. 16, 2010); *Hernandez-Mejias v. General Electric*, 428 F. Supp. 2d 4, 8 (D.P.R. 2005).

Which leads to the third prong: causal link between termination and the purported retaliation. The uncontested facts proffered by defendants show that no reasonable jury

could find a connection between the conclusion of Ms. Rivera's work relationship with the Municipality and her sexual harassment complaint. One of the key considerations in assessing this factor is temporal proximity between the adverse employment action and the protected activity. *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85-86 (1st Cir. 2006)("Temporal proximity can create an inference of causation").

In this case, Ms. Rivera's contract was renewed twice after her June 2015 complaint (on July 1, 2015 and on January 1, 2016). However, by May 10, 2016, the Director of the Department of Recreation and Sports, Luis Reyes Ortiz, had informed the Director of Human Resources that in order to improve efficiency, his department had reorganized all the programs and services and no longer needed the transitory Executive Analyst I position that was being occupied by Ms. Rivera. Therefore, Ms. Rivera was notified of the non-renewal of her temporary contract almost a year after she complained of sexual harassment. Plaintiff counters that the date on which to base the temporal proximity analysis should be the date in which the EEOC issued the Right to Sue Letter (March 22, 2016), not the date in which plaintiff first complained. The

caselaw contradicts her argument. *See Mariani-Colon v. Department of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1ˢᵗ Cir. 2007); *Che v. Massachusetts Bay Transp. Authority*, 342 F.3d 31, 38 (1ˢᵗ Cir. 2003).

Accordingly, the Department of Human Resources formally notified Ms. Rivera that her transitory appointment contract, set to expire on June 30, 2016, would not be renewed. Ms. Rivera was not the only employee whose contract was not renewed. 11 other transitory employees were also terminated on that date. In fact, upon the expiration of Ms. Rivera's contract, the position was eliminated as part of the reorganization of the Department of Recreation and Sports.[2]

Taking all these factors together, we conclude that the record is devoid of evidence that would support a claim of retaliation. We thus recommend that the Presiding Judge

---

2 Even assuming, *arguendo*, that Ms. Rivera had established a *prima facie* case, the Municipality has established that it had a "legitimate, non-retaliatory reason for the employment decision" namely, reorganization of the Department of Recreation and Sports. *See Varela Teron v. Banco Santander de Puerto Rico*, 257 F.Supp.2d 454, 467 (D.P.R. 2003)(citing P.R. Laws Ann. tit. 29, § 185b (e)(f))("Dismissals which take place due to technological changes or reorganizations constitute just cause under Law 80.").

grant the Municipality's request for summary dismissal of the retaliation claim.

### F. Supplemental Claims

Because we recommend dismissal of all the federal claims, we also recommend that the Court dismiss plaintiff's supplemental claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Hernandez Marrero v. Crowley American Transport, Inc.*, 206 F.Supp. 2d 279, 292-93 (D.P.R. 2002)("Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed.").

### V. Conclusion

For the reasons stated herein, we recommend that the Court grant the Municipality's Amended Motion for

Summary Judgment at Docket No. 72, and dismiss all claims against defendants.

IT IS SO RECOMMENDED.

The parties have ten days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143,150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 19th day of March, 2019.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE